UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALEXEIS SARDINAS,

      Petitioner,

  v.                                      Case No.: 2:26-cv-00067-SPC-NPM

KRISTI NOEM *et al.*,

      Respondents,
_____/

**OPINION AND ORDER**

Before the Court are petitioner Alexeis Sardinas's Petition for Writ of Habeas Corpus (Doc. 1), the government's response (Doc. 7), and Sardinas's reply (Doc. 8). For the below reasons, the Court grants the petition.

**A. Background**

Sardinas is a native of Cuba. He entered the country on September 6, 2005. Immigration and Naturalization Service issued Sardinas a notice to appear and released him on his own recognizance. On January 4, 2007, Sardinas adjusted his status to lawful permanent resident under the Cuban Adjustment Act. In 2008, Sardinas was convicted of conspiracy to encourage and induce aliens to enter the United States and sentenced to 18 months imprisonment. An immigration judge ordered him removed on September 24, 2009. On December 8, 2009, Immigration and Customs Enforcement ("ICE") released Sardinas under an order of supervision because it was unable to

execute his removal order. Sardinas's criminal record has remained clean since then, and he has complied with all provisions of his order of supervision.

On November 1, 2025, Sardinas attended his yearly check-in appointment at the ICE office in Miramar, Florida. ICE revoked his supervised release and arrested him. Sardinas claims he was not provided a written notice of revocation of release, a reason for the revocation, or any formal or informal interview to address it. The respondents have submitted a copy of a notice of revocation dated November 1, 2025, and purportedly signed by Assistant Field Office Director Zoelle Rivera. (Doc. 7-1).

Sardinas challenges the legality of his detention under the Due Process Clause of the Fifth Amendment, *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Immigration and Nationality Act ("INA"), and regulations governing revocation of release.

**B. Jurisdiction**

Before addressing the merits of Sardinas's claim, the Court must address its jurisdiction. The respondents argue two sections of the INA strip the Court of jurisdiction over this action. They first point to a provision that bars courts from hearing certain claims. It states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim

> by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). This jurisdictional bar is narrow. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

The respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9). The zipper clause only applies to claims requesting review of a removal order. *See Madu v. U.S. Attorney Gen.*, 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

Sardinas does not challenge the commencement of a proceeding, the adjudication of a case, or the execution of his removal order. Nor does he ask the Court to review the removal order. Rather, Sardinas challenges the legality of his detention based on procedural deficiencies and under a framework devised by the Supreme Court for district courts to apply. *See Zadvydas*, 533 U.S. at 682 (stating the Court's limitation on post-removal detention "is subject to federal-court review."). A decision in Sardinas's favor would not impair ICE's ability to execute the removal order. The INA does not strip the Court of jurisdiction over this action.

### C. Legality of Detention

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." *Singh v. U.S. Attorney Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. *Id.* Detention may continue after the removal period, but not indefinitely.

In *Zadvydas*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." *Id.* at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." *Id* at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. *Id.* Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing.

*Id.*

The respondents argue Sardinas's petition is premature because his current detention has not exceeded 180 days. They assume the six-month presumptively reasonable period of detention resets each time a noncitizen is detained. That assumption is inconsistent with *Zadvydas*. It would effectively allow DHS to detain noncitizens indefinitely and avoid judicial scrutiny by releasing and re-detaining them every 180 days. As the Eleventh Circuit

recognized, "[t]he Supreme Court's stated rationale for establishing a presumptively reasonable '6-month period' for detention pending removal supports our conclusion that this period commences at the beginning of the removal period." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002).

Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Sardinas has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. ICE made that determination when it released Sardinas in 2009, and it has been unable to remove Sardinas in the intervening years. The respondents make no real attempt at rebuttal. ICE has stated its intention to remove Sardinas to Mexico, but it has produced no evidence that removal to Mexico is feasible. There is no indication on the record that Mexico is generally willing to accept Cuban nationals from the United States, or that U.S. officials have contacted Mexico about accepting Sardinas specifically.

**D. Conclusion**

The Court finds no significant likelihood Sardinas will be removed in the reasonably foreseeable future. He is entitled to release from detention under *Zadvydas*, but he remains subject to the terms of the order of supervision. If removal becomes likely in the reasonably foreseeable future, DHS can detain

Sardinas to "assur[e] [his] presence at the moment of removal." *Zadvydas*, 533 U.S. at 680. Sardinas's claims regarding the process used to revoke release are moot.

One last note. In response to Sardinas's argument that ICE failed to follow proper procedure when revoking revocation, the respondents assert Assistant Field Office Director Zoelle Rivera signed the notice of revocation of release based on the Field Office Director's delegation of authority. The Court reviewed four notices of revocation of release forms filed in other cases and purportedly signed by Zoelle Rivera.[1] The signatures do not match. Each is illegible and distinct. It is not clear which of these forms, if any, Rivera actually signed. If counsel for the government asserts Rivera signed a notice in a future case, they must be prepared to verify that assertion with reliable evidence.

Accordingly, it is hereby

**ORDERED:**

Alexis Sardinas Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

---

[1] *Valdes-Santovenia v. Ripa*, M.D. Fla. Case No. 2:25-cv-1063-JES-DNF (Doc. 8-4); *Beltran v. Ripa*, M.D. Fla. Case No. 2:25-cv-1174-SPC-NPM (Doc. 6-5); *Andino Gonzalez v. Noem*, M.D. Fla. Case No. 2:25-cv-1176-SPC-DNF (Doc. 10-3), and *Bolivar Sanchez v. Ripa*, M.D. Fla. Case NO. 2:25-cv-1203 (Doc. 11-6).

1. The respondents shall release Sardinas within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

2. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on January 29, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1